IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEY DILEMANI, : | Civil Action No. 02-CV-2614 |
| Plaintiff, : | |
| vs. : | |
| BUCA, INC., : | ORAL ARGUMENT REQUESTED |
| Defendant. : | |

DEFENDANT BUCA, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF SUMMARY JUDGMENT

INTRODUCTION

In this action plaintiff Bey Dilemani alleges that defendant Buca di Beppo restaurants ("Buca") discriminated against him because of his age when Divisional Vice President Jim Cowler chose not to hire him as a Paisano Partner, or general manager – even though five of the eleven Paisano Partners that Cowler had hired in the relevant period were over age 40, Cowler himself was 43 years old at the time, and Cowler had no knowledge of Dilemani's age when he declined to hire him. Instead, the record shows that Cowler declined to hire Dilemani because he determined in a face-to-face interview that Dilemani's attitude and demeanor were not a good fit for Buca. In his two-count Complaint, Dilemani brings age discrimination claims under both the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and the Pennsylvania Human Rights Act, Pa. Stat. Ann. tit. 43, § 951 et seq. ("PHRA"). Even construing all the evidence in Dilemani's favor, Buca is entitled to summary judgment on both counts of Dilemani's Complaint.

# FACTS

Buca operates more than 50 Buca di Beppo restaurants across the United States. Affidavit of Wes Garnett ("Garnett Aff.") ¶ 2. Each of the restaurants strives to offer a southern Italian dining experience in a warm, family-friendly and festive atmosphere. Buca di Beppo restaurants have a uniquely boisterous quality that Dilemani himself describes as "fun." Deposition of Bey Dilemani ("Dilemani Dep.") 52[1]; Deposition of L. Van Holmes ("Van Holmes Dep.") 90.

Favorably impressed after a visit to a Buca restaurant near his home in Scottsdale, Arizona, in May 2000 Dilemani decided to respond to an advertisement that Buca had placed in Nation's Restaurant News seeking applicants for various positions in various locations nationwide. Dilemani Dep. 51-54, Exh. 1. The ad provided contact information for Buca's Minneapolis headquarters. Dilemani Exh. 1. At the time, Dilemani was already looking for a change from his current employment. Dilemani Dep. 95-96. He submitted his resume to Buca, which was received in Minneapolis by Recruiting Coordinator Lucy Lea. Dilemani Dep. 53-54, Exh. 2; Defendant's Objections and Answers to Dilemani's First Set of Interrogatories ("Def.'s Int. Answers") No. 9 (Gerhan Aff. Exh. F).

**I.      Dilemani Could Not Even Be Considered For Hire By The Divisional Vice President Until After He Completed the Prescreening Process.**

**A.      First, Recruiter Van Holmes Interviewed Dilemani By Telephone.**

Consistent with Buca's hiring process, Lea set up a telephone interview between

---

[1]  Copies of all cited deposition testimony, deposition exhibits and discovery documents are attached as exhibits to the accompanying Affidavit of Daniel C. Gerhan ("Gerhan Aff.").

Dilemani and Lori Van Holmes, who is currently Buca's Director of Family Resources for the west coast and was at the time the Senior Family Resources Manager stationed in Seattle. Van Holmes Dep. 32, 36-37, 76. As Senior Family Resources Manager, Van Holmes's responsibilities included screening candidates for managerial positions. Van Holmes Dep. 39-42. A gatekeeper in the hiring process, Van Holmes eliminates from consideration only those candidates who have no chance of being hired. Van Holmes Dep. 50-54; Deposition of James M. Cowler ("Cowler Dep.") 156-61. Prior to the telephone interview, Van Holmes received Dilemani's resume from Lea but received no other information about him. Van Holmes Dep. 76-77.

Van Holmes interviewed Dilemani for a half-hour or more by telephone on June 1, 2000. Van Holmes Dep. 82, 85. At the time Dilemani was living in Scottsdale, Arizona and managing a restaurant by the name of Spaghetti Western, which he owned together with two other partners. Dilemani Dep. 34-35. Having no need to hire a Paisano Partner in the Phoenix market where Dilemani then resided, Van Holmes questioned whether Dilemani would be interested in a position in another location, including specifically Allentown, Pennsylvania, where Buca had plans to open a new restaurant. Van Holmes Dep. 82-84; Dilemani Dep. 65. Dilemani, who had moved to Arizona from New York only about a year before, indicated that he would. Van Holmes Dep. 133-34; Dilemani Dep. 30-34, 65.

From her interview Van Holmes got the impression that Dilemani was "a bit stiff" with a lot of fine dining experience – which, in her opinion, "sometimes doesn't translate working at Buca," a place she describes as "irreverent, fun." Van Holmes Dep. 90, 91, 110. Based on examples that Dilemani gave her, Van Holmes also concluded that Dilemani was very "matter of fact," with an abrupt management style, and she questioned how well he

3

could nurture and develop personnel. Van Holmes Dep. 85, 91-92, 105, Exh. 16. She also had reservations about Dilemani's salary and advancement expectations as she understood them, questioning whether he could adjust to the style of living on a Paisano Partner salary and whether he was really more interested in a higher-level position. Van Holmes Dep. 84-85, 92-93, 105. Despite her reservations, however, it is undisputed that Van Holmes determined it would be appropriate to pass Dilemani on to the next step in Buca's hiring process. Van Holmes Dep. 86-89.

### B. Next, Before He Could Meet With The Divisional Vice President, Dilemani Had An On-the-Job Interview With A Local Paisano Partner.

The next step in Buca's hiring process was an on-the-job interview, to be conducted by a current Paisano Partner in the area. Van Holmes Dep. 51-52. The on-the-job interview gives the candidate a feel for the job and gives the Paisano Partner another opportunity to eliminate plainly unsuitable candidates before they met with the Divisional Vice President, who actually makes the hiring decision. Van Holmes Dep. 57-59, 68; Cowler Dep. 148-50, 156, 164.

The Paisano Partner near Dilemani's home in Arizona was Rich Perelli. Van Holmes Dep. 111. Notably, before he even had his first meeting with Perelli, Dilemani had already given notice to his partners in Spaghetti Western that he would be leaving and, indeed, had already listed his Scottsdale home for sale. Dilemani Dep. 70-71.

At the on-the-job interview the Paisano Partner typically gives the candidate a personality profile questionnaire to complete. Van Holmes Dep. 58-59; Cowler Dep. 150. Here, the record suggests that Perelli was unable to spend the time with Dilemani that he

ordinarily would in an on-the-job interview. Dilemani met with Perelli a second time to complete his personality questionnaire. Dilemani Dep. 69; see also Van Holmes Dep. 111-13. Dilemani believes both meetings occurred in June 2000. Dilemani Dep. 70.

### C. Dilemani Also Completed A Formal Employment Application, Which Did Not Request His Age, And A Separate Authorization and Disclosure Statement For A Background Check, Which Did.

At about the same time that potential candidates are pre-screened by the recruiting coordinator and the local Paisano Partner, they also complete a formal written application and a disclosure and authorization statement for a background check. Van Holmes Dep. 58; Cowler Dep. 150. Because the Paisano Partner is a general manager responsible for a restaurant with a liquor license, the background check is necessary to make sure the candidate has no history of mishandling money or misusing alcohol. Cowler Dep. 274-76.

On July 12, 2000, Dilemani completed his written application and background check authorization. Van Holmes Dep. 114-15, 142-44, 148, Exh. 14, 15; Dilemani Dep. 78-81. Buca's employment application does not request candidates to state their age. Dilemani Dep. Exh. 3. However, to collect the biographical data necessary to conduct the background check, the authorization and disclosure calls for candidates to give their birth date. Dilemani Dep. Exh. 4.

On his authorization and disclosure, Dilemani stated that his birth date was December 12, 1945. Dilemani Exh. 4. Accordingly, when Dilemani applied for employment with Buca, he was 54 years old. As Buca requested, on July 13, Dilemani returned his written application and disclosure form to Lucy Lea in the Minneapolis home office. Dilemani Dep. 78-81; Van Holmes Dep. 142-44, 148, Exh. 14, Exh. 15. No one else at Buca

5

saw that paperwork during the interview process. Def.'s Int. Answers No. 9. See also Van Holmes Dep. 142-49, Exh. 14, 15.

## II. Divisional Vice President Jim Cowler Made The Decision Not To Hire Dilemani Based Solely On His Face-to-Face Interview.

### A. Cowler Conducted A Phone Screen First.

Although Dilemani's on-the-job interview with Perelli was not conducted in the usual fashion, Van Holmes recalls that she and Perelli nevertheless determined to take him to the next step of the hiring process, an interview with the Divisional Vice President ("DVP"). Van Holmes Dep. 59-60, 68. Because Paisano Partners report directly to the DVP, it is the DVP who actually decides whom to hire, subject only to a nod of approval from a senior vice president or president. Van Holmes Dep. 42, 68-70; Cowler Dep. 156-58, 162.

Where candidates are being considered for a position in a different part of the country from where they live, they typically meet first with a DVP in their market, before Buca arranges for them to travel to meet the DVP who would actually make the hiring decision for the position in question. Van Holmes Dep. 69. In Dilemani's case, a scheduling conflict around the time of the Fourth of July holiday foiled efforts to put him in contact with Joe Talarico, the west coast DVP for California and Arizona, where Dilemani had been living. Dilemani Dep. 76-78, 83; Van Holmes Dep. 122-23. Shortly thereafter, however, Dilemani instead spoke by telephone directly with Jim Cowler, the east coast DVP with direct responsibility for the region that included the restaurant to be opened in Allentown, Pennsylvania, and the DVP who had the authority to hire Dilemani or not. Dilemani Dep. 81-83; Cowler Dep. 187-88.

6

Before Dilemani ever met with Cowler in person, he had already moved to Pennsylvania. Dilemani Dep. 9-11, 84. He admits that he moved without ever receiving any offer letter. Dilemani Dep. 117.

### B. Cowler Made Up His Mind In The Face-to-Face Interview.

After the phone screen, Dilemani and Cowler met in person in Pittsburgh. Dilemani Dep. 83-84; Cowler Dep. 188. The interview lasted only about 30 to 40 minutes. Dilemani Dep. 85; Cowler Dep. 121-23, 188-89. Within half an hour of the meeting, Cowler called Van Holmes to say he would not be hiring Dilemani. Cowler Dep. 189-90, 253. Based on the way Dilemani presented himself, presented his resume, and talked about the people he had worked with, Cowler decided, quite simply, that Dilemani had an arrogant attitude that was not the right fit for Buca, with its family spirit and guest orientation. Cowler Dep. 122, 189, 205-15. Moreover Dilemani was not someone that he, personally, wanted to work with. Cowler Dep. 213-15, 242.

Cowler based his decision solely on the face-to-face interview, and Dilemani's arrogance. Cowler Dep. 178, 242. It is undisputed that Dilemani had several years of relevant experience in the restaurant business, but Dilemani's application was not rejected for lack of experience. Cowler Dep. 242. In making his decision, Cowler did not consult any documents other than Dilemani's resume; indeed, he did not even have Dilemani's application. Cowler Dep. 190. Nor did he have any of the notes that Van Holmes prepared after her telephone interview. Cowler Dep. 190; Van Holmes Dep. 94.

Nor did Dilemani's personality profile come in to play. Cowler does not even typically review personality profiles until after he conducts a personal interview, and there is no evidence that Dilemani's case was any different. Cowler Dep. 168. Even if Cowler had

7

seen Dilemani's personality profile during the interview process – and there is no evidence that he did — it is not Cowler's practice to let the personality profile make hiring decisions for him, especially where he has already decided to reject a candidate. Cowler Dep. 171. Instead, he is more likely only to use the profiles as a validation tool, especially where he is inclined to hire a candidate after an initial interview, but the profile flags a concern that warrants more scrutiny. Cowler Dep. 166-71; see Van Holmes Dep. 127-28.

    C.    **When He Decided Not To Hire Dilemani, Cowler Had No Knowledge Of Dilemani's Age.**

When he decided not to hire Dilemani, Cowler had no idea how old Dilemani was. Indeed, Cowler, who was himself 43 years old at the time, did not even consider it. Cowler Dep. 3, 248. Dilemani never told anyone at Buca how old he was, and the only place where he provided his birth date was the disclosure statement authorizing Buca to obtain a background check – a document that no one at Buca save for Lucy Lea ever received. Def.'s Int. Answers No. 9. As DVP, Cowler would not ordinarily receive the routine applicant paperwork, and Dilemani's case was no exception. Cowler Dep. 268-69. Nor did Cowler obtain any information about Dilemani's age from any other source, including Van Holmes, because Van Holmes did not know Dilemani's age, either. Van Holmes Dep. 140-47.

**III.    After Choosing Not To Hire Dilemani, Buca Continued Its Search For A Paisano Partner.**

Van Holmes recalls the voice mail message that she received from Cowler after his personal interview of Dilemani, because Cowler "was very adamant about saying that Bey was not a fit for him and not a fit for Buca di Beppo." Van Holmes 124. From it she got the impression that Dilemani had not seemed sufficiently interested in the Paisano Partner

8

position and was instead "'already talking Divisional Vice President.'" Van Holmes 125. It was part of Van Holmes's job as recruiter to convey Cowler's decision to Dilemani, and, after touching base with Cowler one more time, she called Dilemani with the news. Van Holmes Dep. 125-31; Dilemani Dep. 88.

Dilemani maintains that he was very surprised to hear he would not be hired, believing after his conversations with Van Holmes and Cowler that he had the job. Dilemani Dep. 88, 94. Although Van Holmes recalls that she had never been yelled at like that before, Dilemani denies that he raised his voice. Van Holmes Dep. 129-31; Dilemani Dep. 89. He does admit that he complained to Van Holmes about the cost of the airline ticket that he had purchased to fly from his new home in Pennsylvania to Pittsburgh for the meeting with Cowler. Dilemani Dep. 89.

For her part, Van Holmes was quite surprised to learn that Dilemani had even purchased his own plane ticket for the interview, because Buca ordinarily covers such travel costs and makes the arrangements in advance. Van Holmes Dep. 129-30. She did not know that Dilemani even needed flight arrangements, because she was under the impression not only that Dilemani was going to be in Pittsburgh, as opposed to some other part of Pennsylvania, but that he was going to be there for personal reasons, regardless. Van Holmes Dep. 130, 132-34. Dilemani claims that Van Holmes was "aware of it totally." Dilemani Dep. 78. Ultimately, this misunderstanding is immaterial for the purposes of this motion because it played no part in Buca's hiring decision, as it only surfaced after the fact, and because Buca subsequently reimbursed Dilemani for his Pittsburgh flight. Dilemani Dep. 90.

9

Buca continued its search for a Paisano Partner to open the Philadelphia restaurant. None of the other applicants for the position was over 40. Garnett Aff. ¶ 3. Several months later, in November 2000, Cowler hired Tim Stenger to fill the position. Cowler Dep. 227. Stenger was 32 years old at the time.

In August 2000, Dilemani wrote a letter to Buca's CEO complaining about his interview process. On January 16, 2001, Dilemani filed a charge of age discrimination with the Pennsylvania Human Rights Commission. Up to that time, Cowler had hired eleven Paisano Partners, five of whom were over the age of 40 when they were hired. Garnett Aff. ¶ 4, Exh. A.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is no genuine issue of material fact in the record and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Gutknecht v. SmithKline Beecham Clinical Lab., 950 F. Supp. 667, 670 (E.D. Pa. 1996), aff'd, 135 F.3d 764 (3rd Cir. 1997). A fact is material only if it might affect the outcome of the suit under the applicable rule of law. Id. When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmoving party. Id. However, the nonmoving party must present actual evidence to support its position, and may not rest upon bare assertions, conclusory allegations, or suspicions. Id.

Here, even construing all the evidence in plaintiff's favor, Dilemani has failed to raise a genuine issue of material fact to support his age discrimination claims. Instead, he relies on the bare allegation that Cowler knew his age and refused to hire him because of it, even though there is no evidence in the record whatsoever to support this accusation. Indeed, the

10

evidence affirmatively shows that Cowler simply did not know Dilemani's age when he decided not to hire him. Accordingly, defendant Buca is entitled to summary judgment on Dilemani's ADEA and PHRA claims.

## ARGUMENT

The ADEA and PHRA both prohibit employers from discriminating against an individual in hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of age. See 29 U.S.C. 623(a)(1); Pa. Stat. Ann. tit. 43, §955. Courts apply the same analysis to claims arising under both statutes. Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3rd Cir. 1998) (citing Simpson v. Kay Jewelers, 142 F.3d 639, 643-44 & n.4 (3rd Cir. 1998) and Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth, 609 A.2d 804, 805 (Pa. 1992)).

**I.   Buca Has Articulated A Legitimate, Nondiscriminatory Reason For Its Decision Not To Hire Dilemani.**

Where, as here, the plaintiff offers no direct evidence of age discrimination, to defeat summary judgment the plaintiff must present circumstantial evidence sufficient to carry his burden under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under a McDonnell Douglas framework, to establish a *prima facie* case of age discrimination, a plaintiff must establish that: (1) he was over 40 at the time he applied for the position in question; (2) he was qualified for the position; (3) despite his qualifications he was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination. Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3rd Cir. 2000). For purposes of this motion, it is undisputed that Dilemani met

the minimum qualifications for the Paisano Partner position and that he otherwise satisfies the elements of his *prima facie* case.

Where the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Id. Here, Buca has plainly done so. After meeting Dilemani face-to-face, in the space of thirty minutes, Cowler decided that Dilemani was not a fit for Buca and not a fit for him because of his arrogant attitude. Based solely on the way Dilemani presented himself during his interview, Cowler decided not to hire him.

## II.     Dilemani Cannot Show Pretext.

Where, as here the defendant satisfies its burden to state a legitimate, nondiscriminatory reason for its decision, to survive a motion for summary judgment the plaintiff must submit evidence which either: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely th[a]n not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3rd Cir. 1994). Dilemani cannot satisfy either prong of the Fuentes test.

### A.     There Is No Evidence To Cast Doubt On Buca's Reasons.

First, under the first prong of Fuentes, there is simply no evidence to suggest that Cowler did not, in fact, believe that Dilemani was arrogant, and reject his application because of it. It is not sufficient for Dilemani simply to argue that Cowler was wrong. Nor may Dilemani argue that his other qualifications are more important than any perceived lack of humility.

12

It is now well-settled that "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." Id. at 764. Accord Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000). Importantly, however, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.

Accordingly, to resist summary judgment Dilemani may not argue that Buca should have relied on some other factor, such as his years of experience or his personality profile. "The employee's positive performance in another category is not relevant," Simpson, 142 F.3d at 647 (citing Ezold v. Wolf, Block, Schorr & Soliscohen, 983 F.2d 509, 528 (3rd Cir. 1993), "and neither is the employee's judgment as to the importance of the stated criterion," id. (citing Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3rd Cir. 1988), cert. denied, 490 U.S. 1098 (1989)). "'The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3rd Cir. 1997) (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)).

Here, Cowler was looking to hire a Paisano Partner who would be reporting directly to him, running a profit center in his division. Based on Dilemani's arrogant attitude, Cowler decided Dilemani was not a good fit for Buca and not a good fit for him. Any other factors Dilemani may seek to raise are simply irrelevant to the ultimate issue.

13

### B. There Is No Evidence that Age Discrimination Was The Real Reason.

Moreover, under the second prong of the <u>Fuentes</u> test, there is no evidence from which a reasonable jury could infer that age discrimination was more likely than not the real reason that Dilemani was not hired. Indeed, there is no evidence that Van Holmes, much less Cowler, even knew Dilemani's age. And, even if Dilemani could show that Buca knew his age, "[m]ere knowledge of an employee's age does not constitute discriminatory animus." <u>Gutknecht</u>, 950 F. Supp. at 671.

Notably, none of the other applicants for the Allentown Paisano Partner position were over the age of 40. Cowler himself, now 46, was 43 years old at the time he decided not to hire Dilemani. At the time Dilemani had filed his charge, Cowler had hired eleven other Paisano Partners, five of whom were over the age of 40 when they were hired. These facts preclude any inference of discrimination.

In <u>Sadler v. Marriott Int'l, Inc.</u>, No. CIV. A. 98-762, 1999 WL 357381 (E.D. Pa. June 3, 1999) (copy attached, Gerhan Aff. Exh. G), the defendant company declined to hire the plaintiff as a security guard, where the company concluded that both his personality questionnaire and his personal interview reflected a lack of teamwork. The decision-maker, like Cowler here, did not know the plaintiff's age, and over one-third of the applicants hired by the defendant were over 40. On these facts, the court awarded summary judgment in favor of the employer, finding the facts precluded any inference of discrimination. Similarly here, Buca is entitled to summary judgment.

## CONCLUSION

In sum, Dilemani has failed to carry his ultimate burden to prove that Buca engaged in intentional age discrimination. Because there is no genuine issue of material fact to support his claims, Buca is entitled to summary judgment.

Dated:  February 3, 2003                                  FAEGRE & BENSON LLP


                                                          /s/ *Daniel C. Gerhan*
                                                          Daniel C. Gerhan, #189698

                                                          2200 Wells Fargo Center
                                                          90 South Seventh Street
                                                          Minneapolis, MN  55402-3901
                                                          (612) 766-7000


                                                          LOCAL COUNSEL:
                                                          Kay Kyungsun Yu (I.D. No. 83701)
                                                          Morgan, Lewis & Bockius LLP
                                                          1701 Market Street
                                                          Philadelphia, PA  19103-2921
                                                          (215) 963-5000

                                                          Attorneys for Defendant
                                                          Buca di Beppo

M1:958753.01

## *CERTIFICATE OF SERVICE*

I hereby certify that on February 3, 2003, I electronically filed the foregoing with the Clerk of Court using the ECF system. This document is available for viewing and downloading from the ECF system.

Additionally, a copy of the foregoing was mailed to the attorney named below at the address shown below by UPS Next Day Air from Minneapolis, MN on February 3, 2002:

**Mr. Scott B. Goldberg**
**Michael J. Salmanson, P.C.**
**1515 Locust Street, 10th Floor**
**Philadelphia, PA  19102**

                                            */s/ Daniel C. Gerhan*
                                            Daniel C. Gerhan